# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 20, 2011 Session

## DELMAR REED v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-B-1757     Steve Dozier, Judge**

---

**No. M2010-01178-CCA-R3-PC - Filed September 29, 2011**

---

Aggrieved by his Davidson County Criminal Court jury convictions of ten counts of harassment, one count of attempted aggravated burglary, one count of vandalism of property valued at $500 or less, one count of vandalism of property valued at $1,000 or more but less than $10,000, and one count of setting fire to personal property, for which he received an effective sentence of 19 years' incarceration, the petitioner, Delmar Reed, filed a timely petition for post-conviction relief alleging ineffective assistance of counsel. Following a full evidentiary hearing, the post-conviction court denied relief. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Gerald S. Green, Memphis, Tennessee (on appeal); and Jeremy Parham, Nashville, Tennessee (at evidentiary hearing), for the appellant, Delmar Reed.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Rachael Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner's convictions arose from acts committed against his then-estranged wife that occurred over several months in late 2005. As succinctly stated in this court's direct appeal opinion:

> The victim testified that she was married to the

defendant and that they went through many periods of separation. She said that they had an abusive relationship in which he was physically and verbally violent toward her. The defendant made many threatening phone calls to the victim both at home and at her place of employment, including threats that he would hurt or kill her and that the police could not stop or catch him. Many of their arguments revolved around the victim's automobile. She also testified to an incident when her son heard sounds outside their window. During this incident, she looked out the window and saw the defendant "standing out in the dark throwing [small rocks] up at the window with a – just a white wife-beater shirt on." The defendant moved for a mistrial at the characterization of the shirt as a "wife-beater."

The victim testified that on September 8, 2005, the defendant repeatedly called at her work and threatened to kill her for calling the police. He also told her that he would "burn [her] ass out" and that she would have nowhere to live and nothing to drive. That evening she received a telephone call when the caller said, "Bitch . . . lemme show you what I'm talking about." She looked out the window and saw her car with a grey car parked nearby. Moments later, she heard an explosion, looked out the window, and saw her car "engulfed in flames" with the defendant standing nearby. The victim testified that the defendant called her while the police were filling out a report and said, "Bitch I told you what I could do."

The defendant continued to call the victim and tell her that he was not finished with her or her children. After the defendant's bond hearing, he called her again and told her "Bitch, you done messed up now." She testified that the defendant showed no remorse for his actions and that the experience was horrifying for her.

Several witnesses testified for the defendant at trial. One friend [Marion Jones] testified that the defendant had stayed with her and her aunt in Murfreesboro during the time the victim's car was burned. She also testified that she drove a grey car at the time the defendant stayed with her. Several witnesses testified that they lived in the victim's apartment complex during the time the car was burned and said that they saw a

> black man run from the scene rather than drive away from the scene.

*State v. Delmar K. Reed, a.k.a. Delma K. Reed*, No. M2007-00259-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App., Nashville, Oct. 7, 2008). Following the petitioner's convictions, the trial court sentenced the petitioner to serve 19 years' incarceration as a Range II, multiple offender.

On April 23, 2009, the petitioner timely filed a pro se petition for post-conviction relief alleging 93 specific instances of ineffective assistance of counsel in addition to prosecutorial and judicial misconduct. Following the appointment of counsel, the petitioner filed an amended petition alleging that his attorneys were ineffective in their investigation of several witnesses, impeachment of the victim, failure to present proof at trial that Ms. Jones set fire to the victim's car, and failure to dismiss his indictment based upon an improper joinder of offenses. The petitioner presented evidence relative to these ineffective assistance of counsel claims at the March 30, 2010 hearing.

The petitioner testified that he was represented by multiple attorneys throughout the pendency of his case in general sessions court to appeal.[1] He stated that none of the attorneys adequately investigated his claim that Ms. Jones had set fire to the victim's vehicle. The petitioner testified that he initially believed that Ms. Jones would make a good alibi witness but expressed concerns to counsel regarding this strategy when he came to believe that Ms. Jones might have been "the one that did the crime." The petitioner presented copies of letters to counsel as evidence of his voicing these concerns.

The petitioner also testified that trial counsel failed to interview several witnesses despite his urging them to do so. One witness, Decole Archery, was familiar with the petitioner and victim's relationship and would have discredited the victim's claims of a pattern of abusive behavior inflicted by the petitioner. Another witness, Reginald Gibbs, would have testified that the petitioner asked Mr. Gibbs to retrieve clothing from the home shared with the victim on the night of the alleged attempted aggravated burglary and that Mr. Gibbs, not the petitioner, was the man at the home that night. The petitioner also claimed that trial counsel should have questioned "Detective Pinkerton" concerning the relationship between the petitioner and the victim and the fact that the victim "was continuously lying on a regular basis" concerning incidents of abuse. The petitioner faulted trial counsel for not

---

[1] It appears that at least three attorneys with the Davidson County District Public Defender's Office represented the petitioner until sentencing, at which time private counsel was appointed, who represented the petitioner through the completion of his direct appeal.

presenting Elsie Jackson as an alibi witness for the setting fire to personal property offense.[2]

The petitioner claimed that trial counsel failed to utilize telephone logs which, he claimed, did not show a series of phone calls and negated the harassment offenses. The petitioner also faulted trial counsel for not presenting proof that the victim had visited him five times while he was incarcerated awaiting trial.

On cross-examination, the petitioner admitted that the victim's visits while he was in jail occurred when he was jailed for previous instances of domestic abuse or violations of a protective order. Likewise, he admitted that the victim never visited him after his arrest on the conviction offenses. The petitioner denied that trial counsel met with him regularly and characterized their meetings as counsel's "just coming over to see me to basically brush me off." He also claimed that trial counsel told him that "we're gonna win this case regardless" of any alibi testimony presented.

Amber Cassidy, an investigator for the Davidson County District Public Defender's Office, testified that she had concerns regarding the veracity of Ms. Jones's statements when the petitioner's "story changed" from that of Ms. Jones's being an alibi witness to her being a perpetrator. She also recalled that Ms. Jackson told her that the petitioner was working for her in September 2005 doing "odd jobs" but that Ms. Jackson could not confirm that the petitioner was home on the specific evening that someone set fire to the victim's car.

Reginald Gibbs testified that one day in early September 2005, the petitioner asked him to go to the victim's home to retrieve some clothing. Mr. Gibbs was aware that the victim and the petitioner had been arguing. He said that he went to the victim's home at approximately 11:30 p.m. – "close to midnight." He recalled knocking on the door and that the victim eventually answered the door. She opened the door with the security chain still in place. Mr. Gibbs said that the victim told him, "If you don't get away from my g[**] d[***] door, I'm going to call the mother f[******] police." Mr. Gibbs testified that he then decided to leave without retrieving the petitioner's clothing. He denied that he "beat on" the door or attempted to break the lock, as was alleged in the petitioner's charges of attempted aggravated burglary and misdemeanor vandalism. Mr. Gibbs testified that no one from the public defender's office interviewed him and that he had no reason to lie for the petitioner at the evidentiary hearing.

---

[2] Ms. Jackson was deceased at the time of the evidentiary hearing. It appears from the record that she was the aunt of Ms. Jones and that the petitioner was residing with both ladies in Ms. Jackson's home in September 2005.

-4-

Decole Archery testified that he had spent a lot of time with both the petitioner and the victim and that he considered them "like family." He said that he never saw the petitioner become physically or verbally abusive toward the victim. He overheard one argument when the victim became angry with the petitioner's association with prostitutes and his failure to provide the victim drugs. He said that he and the petitioner left the home before the argument progressed any further. Mr. Archery testified that no attorneys contacted him in preparation for the petitioner's trial.

The first assistant district public defender assigned to the petitioner's case testified that she represented the petitioner at his preliminary hearing and bond hearing before the case was assigned to a second attorney in the office. She recalled that Ms. Jones contacted her office and said she wanted to testify on the petitioner's behalf at the preliminary hearing concerning an alibi. She recalled that the petitioner later told her that Ms. Jones may have set fire to the victim's car. When confronted with specific letters written by the petitioner to trial counsel, she did not refute the letters despite not having specific recollection of them. She said that it would be an "understatement" to say that she had received several letters from the petitioner.

The second assistant district public defender who represented the petitioner testified that he was "involved during the buildup" for trial. He recalled discussions with the petitioner concerning possible alibi witnesses and the problems associated with Ms. Jones's testimony when the petitioner later disclosed his belief that she had burned the victim's car. For a time, the focus on alibi witnesses shifted to Ms. Jackson, but counsel testified that Ms. Jackson was "very elderly and extremely vague" in her statement and that she did not make a good alibi witness.

The third assistant district public defender testified that he was assigned the petitioner's case in mid-June 2006 just weeks before the case went to trial on July 10, 2006. He recalled the petitioner's claiming that he had sent someone to get his clothing at the victim's home as it related to the attempted aggravated burglary charge. He also stated, however, that the claim "certainly didn't jive with what [the victim] was saying." He also noted that the incident report of the attempted aggravated burglary indicated that it occurred at approximately 1:25 a.m., close to two hours after Mr. Gibbs testified he had attempted to retrieve the petitioner's clothing at the victim's home.

Counsel testified that the petitioner never mentioned Mr. Archery as a possible witness to the petitioner and victim's relationship. He opined that no real discrepancies existed between the victim's statements and her testimony at trial. He also admitted that, despite the petitioner's insistence, he did not interview the victim's son because he determined that nothing favorable could be gained by his testimony. Counsel confirmed that

Ms. Jackson's memory was "vague," making her less than ideal as an alibi witness. Trial counsel recalled that he went "back and forth" about Ms. Jones's testifying at trial, but he said that he did not believe the petitioner's claim that Ms. Jones had set the fire. Counsel recalled that the petitioner telephoned the victim repeatedly while the police were present at the victim's home on the night of the car burning. He admitted, therefore, that he did not utilize telephone records because they would have further corroborated the victim's testimony concerning the calls.

John Hunter, III, the victim's son, testified that he was at home when his mother's car was set on fire. He recalled seeing a grey car drive away and the petitioner's calling the victim almost immediately. Mr. Hunter said that he did not see the petitioner but that his mother told him she had seen the petitioner near her car when it was set on fire.

In its order denying post-conviction relief, the post-conviction court accredited the testimony of the attorneys. The court ruled that the attorneys had made sound tactical decisions concerning the presentation and examination of witnesses based upon their investigation. The post-conviction court also ruled that the testimony proffered at the evidentiary hearing was either unknown to the attorneys at the time of trial, too uncertain (as in the case of Ms. Jackson), or would not have been favorable (as in the case of Mr. Hunter). Accordingly, the court ruled that the petitioner failed to prove his allegations by clear and convincing evidence and denied relief.

On appeal, the petitioner contends that the multiple changes of counsel resulted in an overall deficient representation. He also argues that the post-conviction court should not have been allowed to preside over his evidentiary hearing given that it was the same court that presided over his original trial.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930,

936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6, S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The record in this case fully supports the findings of fact and conclusions of law of the post-conviction court. The testimony of all the attorneys reveals that they conducted a thorough investigation of the petitioner's case and made sound tactical decisions based upon that investigation. The trial record reveals the same. The petitioner failed to establish either deficient performance or prejudice relative to his allegations.

As to the petitioner's claim that the post-conviction court should not have presided over his case, we note that the petitioner makes this allegation for the first time on appeal. As such, any challenge to the post-conviction court's ability to rule in this case has been waived. *See Woodson v. State*, 608 S.W.2d 591, 593 (Tenn. Crim. App. 1980) (ruling that the petitioner's failure to object to the court's qualification to preside over the case waived any issue on appeal); *see also* Tenn. R. App. P. 13(b); 36 (appellate review is generally limited to the issues raised and decided in the trial court). Furthermore, the petitioner's brief makes only a general allegation of judicial bias without reference to any specific instance of bias, and we discern no such bias from the record before this court. In that vein, any general claim that the original convicting court should be precluded from

presiding over the subsequent post-conviction action is without merit. *Harris v. State*, 947 S.W.2d 156, 172 (Tenn. Crim. App. 1996) ("a judge is in no way disqualified merely because he has participated in other legal proceedings against the same person").

*Conclusion*

The record in this case fully supports the findings of fact and conclusions of law of the post-conviction court. The judgment of the post-conviction court denying relief is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE